# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

––––––––

Argued August 25, 2022       Decided September 6, 2022
Reissued November 29, 2022

No. 22-3021

UNITED STATES OF AMERICA,
APPELLEE

v.

KEITH MATTHEWS, ALSO KNOWN AS BANG, ALSO KNOWN AS
BAIN, ALSO KNOWN AS BANE,
APPELLANT

––––––––

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cr-00203-6)

––––––––

*Celia Goetzl*, Assistant Federal Public Defender, argued the cause for appellant. With her on the appellant's Memorandum of Law and Fact was *A.J. Kramer*, Federal Public Defender.

*Daniel J. Lenerz*, Assistant U.S. Attorney, argued the cause for appellee. With him on the appellee's Memorandum of Law and Fact were *Chrisellen R. Kolb*, *Elizabeth H. Danello*, and *George P. Eliopoulos,* Assistant U.S. Attorneys.

Before: WILKINS, KATSAS, and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*:  After Keith Matthews violated his supervised release conditions, the district court placed him in home detention and later imposed a revocation sentence of imprisonment and a new term of supervised release.  Matthews contends that the court lacked authority to impose both home detention and imprisonment for the same violations, but he waived this argument below.  Matthews also contends that the court's written judgment improperly contains various discretionary conditions of supervised release that were not orally pronounced at sentencing.  We agree.

I

Matthews was convicted of unlawfully possessing a firearm as a felon.  The district court sentenced him to imprisonment followed by a term of supervised release.  As conditions for his release, the court prohibited Matthews from using illegal drugs and required him to undergo drug testing.  Soon after his release, Matthews failed three drug tests and skipped several more.

At a revocation hearing in November 2021, Matthews conceded the accuracy of the failed tests.  He denied missing any other tests and sought information about them from the Probation Office.  Based on Matthews's admitted drug use, the district court proposed putting him in home detention temporarily, while the parties tried to resolve their dispute about the number of missed tests.  The court further stated that it would sentence Matthews only later, after determining the full extent of his violations.  The court asked whether proceeding in this way was acceptable to the defense.  Matthews's counsel answered that it was.   The parties

eventually stipulated that Matthews had failed three drug tests and skipped others scheduled over the course of two months.

At sentencing, Matthews changed his tune. He argued that because the district court had already imposed home detention for violating release conditions, it could not impose a term of imprisonment for the same violations. The court disagreed. It orally sentenced Matthews to four months of imprisonment followed by 32 months of supervised release. The court stated that the supervised release would include drug testing but specified no other conditions. In contrast, the court's written judgment imposed 21 conditions of supervised release—four specifically required by statute, 13 recommended in a Sentencing Commission policy statement, one about drug testing, and three others.

## II

Matthews first contends that the district court erred by revoking supervised release and imprisoning him after it had already imposed home confinement. His argument turns on 18 U.S.C. § 3583(e), which governs the modification or revocation of supervised release. As relevant here, section 3583(e) gives a district court three options for responding to a violation of release conditions. *First*, the court may "modify" the conditions that it previously imposed. *Id.* § 3583(e)(2). *Second*, the court may "revoke" the term of supervised release and require the defendant to "serve in prison" all or part of that term, subject to statutory maxima depending on the seriousness of the underlying offense. *Id.* § 3583(e)(3). *Third*, the court may order the defendant "to remain at his place of residence during nonworking hours," but "only as an alternative to incarceration." *Id.* § 3583(e)(4). Matthews contends that section 3583(e)(4) requires the district court to make a unitary choice between incarceration and home detention: The court

may impose a term of incarceration or a term of home detention, but not both. The government reads section 3583(e)(4) differently. On its view, the statute simply prohibits the combined term of any imprisonment and any home detention from exceeding the maximum term of imprisonment authorized by section 3583(e)(3). Here, it concludes, the district court's orders were lawful because Matthews received only seven months of home detention followed by four months of imprisonment—far less than the maximum authorized revocation sentence of two years.

We need not decide who is correct, because Matthews waived below the argument that he seeks to press here. At the November 2021 hearing, the district court made crystal clear its intent to impose home detention only "temporarily," as a "stop-gap measure" while the parties tried to reach agreement on how many drug tests Matthews had missed. J.A. 98–99. Likewise, the court twice made clear that it would "sentence" Matthews only later, after resolving that question. J.A. 99–100. In its motion to revoke supervised release, the Probation Office argued that Matthews's acknowledged drug use required the court to impose some term of imprisonment, regardless of whether Matthews had skipped any tests. And the district court, more than a month before the November 2021 hearing, ordered defense counsel to tell Matthews that it viewed a further "prison sentence" to be "mandatory" given "his track record of prior criminal activity." J.A. 79. At the November 2021 hearing, after proposing to impose home detention and then a later final sentence, the district court asked point-blank whether proceeding in this way was "acceptable to the defense." J.A. 100. Matthews's counsel answered succinctly: "Yes. Thank you." *Id.* Having agreed to this structured proceeding of home detention followed by a revocation sentence that would include some term of imprisonment, Matthews cannot now complain that the district court gave him

exactly that. *See United States v. Olano*, 507 U.S. 725, 732–33 (1993).[1]

### III

The supervised release statute draws a basic distinction between mandatory and discretionary conditions. It enumerates certain mandatory conditions that a district court "shall" order, such as not committing any further crimes and not unlawfully possessing a controlled substance. 18 U.S.C. § 3583(d). Then, it provides that a district court "may" order any other condition that is reasonably related to several of the sentencing factors in section 3553(a), involves no greater deprivation of liberty than reasonably necessary, and is consistent with any pertinent Sentencing Commission policy statements. *Id.* § 3583(d)(1)–(3). Matthews contends that all such discretionary conditions must be orally pronounced at the defendant's sentencing. We agree.

Criminal defendants have a right to be physically present at sentencing, which is grounded in the Fifth Amendment and codified in Federal Rule of Criminal Procedure 43(a)(3). *See*

---

[1] Matthews alternatively contends that even if a district court may impose some combination of home detention and imprisonment for the same violation of release conditions, section 3583 and the Double Jeopardy Clause required the court do so contemporaneously rather than in sequence. As the recitation above shows, this claim too falls squarely within the scope of Matthews's waiver. Accordingly, we need not consider whether the home detention imposed here is better classified as a modification of the original release conditions under section 3583(e)(2), as the government contends, or as itself a revocation sentence under section 3583(e)(3), as Matthews contends. Likewise, we need not consider whether the answer to that question would have affected the district court's ability to proceed sequentially rather than all-at-once.

*United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam); *United States v. Love*, 593 F.3d 1, 9 (D.C. Cir. 2010). A district court must therefore orally pronounce any sentence within the defendant's presence. This oral pronouncement "constitutes the judgment of the court," *Gilliam v. United States*, 269 F.2d 770, 772 (D.C. Cir. 1959), and a later written judgment "is a nullity to the extent it conflicts" with the oral one, *United States v. Booker*, 436 F.3d 238, 245 (D.C. Cir. 2006). When the written and oral judgments conflict, we remand with instructions to conform the written judgment to the oral one. *Love*, 593 F.3d at 9.

The written judgment in this case contains 21 conditions of supervised release. One of them—that Matthews undergo drug testing—was orally pronounced. Four of them are mandatory conditions specifically required by section 3583(d). The parties agree that a district court need not orally pronounce such mandatory conditions, which follow from the imposition of supervised release as a matter of law. *See*, *e.g.*, *United States v. Rogers*, 961 F.3d 291, 296–97 (4th Cir. 2020); *United States v. Anstice*, 930 F.3d 907, 909 (7th Cir. 2019). The other 16 conditions are discretionary ones that were not orally pronounced at Matthews's sentencing. The government offers three arguments why they were nonetheless lawfully imposed.

*First*, the government contends that when a district court imposes supervised release as part of a *revocation* sentence, it need not *re*-pronounce conditions already pronounced and imposed as part of the original sentence, as were most of the disputed conditions here. But the original term of supervised release is distinct from any subsequent term imposed after revocation. A revocation sentence arises when the district court chooses to "revoke a term of supervised release" and thereby sentence the defendant to additional time "in prison." 18 U.S.C. § 3583(e)(3). Moreover, "[w]hen a term of

supervised release is revoked … the court *may* include a requirement that the defendant be placed on a term of supervised release after imprisonment." *Id.* § 3583(h) (emphasis added). These provisions make clear that the original supervised release term does not survive its own revocation. And the district court, to impose a second supervised release term as part of the revocation sentence, must make a discretionary judgment that the circumstances warrant it. Yet circumstances may have changed from when the original sentence was imposed. For these reasons, the court must consider and pronounce any discretionary conditions anew, after giving the defendant an opportunity to contest whether they remain appropriate. *See United States v. Porter*, 43 F.4th 467, 472 (5th Cir. 2022); *Rogers*, 961 F.3d at 294.

*Second*, the government argues that district courts never have to pronounce the "standard conditions" that are "recommended" in all cases by a Sentencing Commission policy statement, U.S.S.G. § 5D1.3(c). These conditions include requirements to report to the relevant probation office, take directions from the assigned probation officer, and answer his questions truthfully. *See id.* § 5D1.3(c)(1)–(2), (4). Two courts of appeals have held that these standard conditions need not be orally pronounced because they are "implicit in an oral sentence imposing supervised release." *United States v. Napier*, 463 F.3d 1040, 1043 (9th Cir. 2006); *United States v. Truscello*, 168 F.3d 61, 62–63 (2d Cir. 1999). Moreover, these courts reason, the standard conditions form the administrative backbone of supervised release, and so they are "almost uniformly imposed." *Truscello*, 168 F.3d at 63.

We respectfully disagree. For one thing, no matter how commonsensical the standard conditions may seem, the governing statute classifies them as discretionary, as does the policy statement itself. *See* 18 U.S.C. § 3583(d); U.S.S.G.

§ 5D1.3(c). And courts may impose discretionary conditions only after making an individualized assessment of whether they are "reasonably related" to normal sentencing factors, 18 U.S.C. § 3583(d)(1), and whether they involve "no greater deprivation of liberty than is reasonably necessary" under the circumstances, *id.* § 3583(d)(2). Moreover, even the most pedestrian of the conditions contains a level of detail that cannot plausibly be characterized as implicit in supervised release itself—for example, the requirement to report to the probation office within 72 hours of release rather than, say, within 48 hours or 96 hours. U.S.S.G. § 5D1.3(c)(1). And some of the standard conditions are quite intrusive—for example, the requirements to live somewhere approved by the probation officer, *id.* § 5D1.3(c)(5), and to work full time unless excused by the probation officer, *id.* § 5D1.3(c)(7). For these reasons, the standard conditions cannot be treated as legally or practically compelled by the imposition of any term of supervised release. Instead, as three other circuits have held, the district court must consider whether they are warranted in the circumstances of each case, must allow the defendant an opportunity to contest them, and must orally pronounce them at sentencing. *Rogers*, 961 F.3d at 297–98; *United States v. Diggles*, 957 F.3d 551, 558–59 (5th Cir. 2020) (en banc) (unanimous); *Anstice*, 930 F.3d at 910.[2]

---

[2] We do not suggest that the district court must orally pronounce all discretionary conditions word-for-word; conditions written out in advance of sentencing may be orally incorporated by reference. For example, a district court may satisfy the pronouncement requirement by referencing and adopting the conditions recommended in a presentence report or by simply saying that it is imposing the "standard" conditions. *See United States v. Martinez*, 15 F.4th 1179, 1181 (5th Cir. 2021); *Diggles*, 957 F.3d at 560–62.

*Third*, the government contends that Matthews invited error by asking the district court to impose non-standard, discretionary conditions that he receive treatment for substance abuse and mental health.  But the government takes Matthews's statements out of context:  He requested continued treatment as an alternative to revocation and imprisonment.  He did not ask for treatment requirements as a condition of supervised release following a revocation sentence of imprisonment, much less for the imposition of such requirements without oral pronouncement.  Because Matthews did not induce the error about which he now complains, there was no invited error. *United States v. Lawrence*, 662 F.3d 551, 557 (D.C. Cir. 2011).

IV

We affirm Matthews's term of imprisonment.  Because the written judgment contains discretionary release conditions that were not orally pronounced at sentencing, we remand for the district court to conform the written judgment to the orally pronounced one (plus the unchallenged mandatory conditions). *See Love*, 593 F.3d at 14.  In so doing, we do not disturb the district court's independent authority to prospectively modify Matthews's release conditions under section 3583(e)(2).

*So ordered.*